Palfrey et als. vs. Sheriff and Tax Collector et als.

## III.

But, if it had been otherwise, and if the crime of "horse riding," etc., could be said to be included in that of "horse stealing," it does not appear from the bill of exceptions relied on that, as a matter of fact, there was any proof offered tending to establish the crime of "horse riding," etc., and hence, so far as the record shows, there was no reason why the trial judge should have given the charge requested. " On a criminal prosecution it is not necessary for the court, of its own " motion, or on request, to instruct as to the lower grades of crime " involved, where there is no evidence on which to base such instruc- " tion. The giving of such instruction is not only unnecessary, but " improper." Ency. Pl. & Pr., Vol. 11, p. 211.

There is no error to the prejudice of the appellant in the judgment appealed from, and it is accordingly affirmed.

Rehearing refused.

---

## No. 14,021.

GEORGE D. PALFREY ET ALS. VS. ARTHUR W. CONNELY, SHERIFF AND EX OFFICIO TAX COLLECTOR, ET ALS.

### SYLLABUS.

1. The "levying of taxes" and the "assessment of property" for the purposes of taxation are for each calendar year and are to be made on the basis of the condition of things existing on the first of January. (Southern Insurance Co. vs. Board of Assessors, 49 Ann. 401.)
2. Trees standing by the roots upon and forming part of a certain plantation on the first of January of a given year are included in the taxation and assessment of the plantation for that year as a whole. Payment of the taxes upon the plantation carries with it payment of taxes for that year upon the trees. They are not subject to taxation twice in the same year.

A PPEAL from the Twentieth Judicial District, Parish of Terrebonne.—*Caillouet, J.*

---

*Charles A. O'Niell,* for Plaintiffs, Appellants.

---

*Charles W. DuRoy,* for the Sheriff, Defendant, Appellee.

---

*Walter Guion,* Attorney General, and *Whitmell P. Martin,* District Attorney, for C. A. Duvall, Jun., Assessor, Defendant, Appellee.

*Briant & Butler,* for Mrs. S. G. Humphreys, called in warranty, Appellee.

## STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J.   Plaintiffs allege that in February, 1900, they purchased from Mrs. Humphreys, for and in consideration of the price of $8,250, paid cash, "all of the cypress trees and the exclusive right to deaden, cut, fell and float and get out all of said cypress trees or timber on certain described lands in the Parish of Terrebonne.   That by the contract the purchasers were given all advantages and facilities necessary for getting out the timber on said lands, and should have this exclusive right and privilege for the period of six years, commencing from the date of the contract, and to that end they should have and the vendor sold to them the right to cut and excavate a canal of certain described length and depth and direction, and to construct certain tramways.

That at the time of said purchase and during the years previous to 1899 the said property, which formed part of the Magnolia Plantation, was assessed to Mrs. Humphreys.   That their vendor had paid all taxes at the time of the contract, and that she obligated herself to pay all subsequent taxes upon the property affected by the purchase (which they styled a servitude) and including and embracing the said servitude and the property acquired by the purchase.

That for the year 1900 the same property was again assessed to Mrs. Humphreys under the identical description contained in the assessment for the year 1899, and without any reservation or deduction whatever, at identically the same cash value of $4,355.

That in addition to the said assessment of the entire property affected by said servitude, without deduction or reservation of any timber or mention of any servitude in said description or assessment to petitioners, the aforesaid servitude described on the assessment rolls as "One lot of cypress timber situate in swamp on left bank of Bayou Black or Magnolia Plantation of Mrs. S. G. Humphreys."   That said servitude was assessed at $6,000, notwithstanding the entire Magnolia Plantation, including the said servitude and timber, was assessed to Mrs. Humphreys at $4,355, the same value at which it had always been assessed.

That the sheriff, ex-officio tax collector for the Parish of Terrebonne, was attempting to enforce from petitioners the payment of the taxes unlawfully and illegally levied against the said timber servitude amounting to the sum of $185.

They averred that the said assessment was errroneous, illegal, null and void, for the reason that the same constitutes a dual assessment, the said timber being still attached to the soil, and forming part and parcel of the realty, and being included in the assessment of the Magnolia Plantation to Mrs. Humphreys. That none of the timber had been cut or separated from the realty, and the same was still attached by the roots to the soil, for the further reason that the description did not state the quantity of timber nor the area of the land on which it was situated, nor the dimension of the land and the boundaries thereof, nor the subdivisions according to the United States survey or any other survey.

That the tax collector should be enjoined from enforcing the collection of said tax erroneously and illegally assessed to petitioners. That the assessment should be annulled and avoided and stricken from the rolls.

In the alternative they prayed, should the court decree the said assessment to be valid for any reasons whatever and collectible from petitioners, and should the court render judgment accordingly, then petitioners were entitled to remuneration for the full amount of said tax and all costs from their vendor, Mrs. Humphreys, as their warrantor and as provided for in said contract of sale, wherein she specially obligated herself to pay all subsequent taxes that might be levied against the property or any portion thereof, and therefore they were entitled to cite her in warranty as their vendor in order that, if judgment be rendered against petitioners decreeing the assessment legal, then they might have judgment against her in warranty for said taxes and costs. They prayed for citation on her, the tax collector and also the assessor of the Parish of Terrebonne, that there be judgment in their favor against the tax collector and assessor annulling and revoking the said assessment and decreeing the same to be absolutely null and void, and that the said collector be enjoined from enforcing the said collection of the tax assessed against them, and that the assessment be ordered to be stricken from the rolls. Contingently, should the court render a judgment in the premises adversely to their claims and upholding the tax assessed against them, they prayed for judg-

ment against Mrs. Humphreys for the amount which the court might maintain the tax and costs, and they prayed for general relief.

The tax collector pleaded the general issue.

The assessor, after pleading a general denial, averred that the plaintiffs had purchased all of the cypress trees on the land described in their petition, and admitted he had assessed the land as alleged. He averred that by the sale to the plaintiffs the trees were mobilized by anticipation, thereby rendering the trees movable *quoad* the right of ownership acquired by the plaintiffs, and the trees therefore became subject to be assessed separate and apart from the land. He maintained the legality of the assessment.

Mrs. Humphreys, after pleading a general denial, specially denied the legality of the assessment attempted to be made against plaintiffs. She admitted the execution of the act and that it contained the clause that " all the taxes assessed against the above described property have been paid as evidenced by the tax collector's receipts annexed, and the vendor obligates herself and her assigns to pay all subsequent taxes"; that the plain meaning and extent and the only legal effect of said clause was to bind her to a continuation of the payment of whatever taxes (such taxes as she had always heretofore paid) that in the future might be assessed against the Magnolia Plantation (that plantation being "the above described property") referred to by the tax collector in the receipt annexed to and made part of the original act.

That it never was her intention nor was she ever requested by her vendees in said sale, nor did she ever agree with them to stand between them and the payment of any taxes with which they might ever be burdened by the State of Louisiana or Parish of Terrebonne, on account of timber purchased by them, nor did she ever understand that she was expected so to do by said vendees or give them any reason to believe that she expected so to do. That she understood the motive of the vendees in requesting the incorporation of said clause in said act was to secure themselves against the contingency of the worthless swamp land upon which said cypress trees and timber stand being sold by the State for the non-payment of taxes, to the possible annoyance and loss of vendees, and that it was this purpose and with no other intention that she consented to said clause; that taxes on the "Magnolia Plantation" had always been paid and would continue to be paid.

She averred that the timber assessed to plaintiffs was not all situated

upon the Magnolia Plantation, and that in no event would she be liable for any greater portion of the taxes than for the taxes upon the timber on that plantation.

Her prayer was in accordance with her pleadings.

The District Court rendered judgment in favor of the defendants and of the vendor called in warranty and rejected plaintiffs' demand with costs.

The plaintiffs filed a petition in which they alleged that they were aggrieved by the judgment and desired to appeal both from the decision upon the legality and unconstitutionality of the tax and upon all matters of assessment and questions of fact. They averred that the questions of the legality and constitutionality of the tax and the question of the violation *vel non* of the Constitution and of the Act No. 170 of 1898, especially Section 7 thereof, were questions of which the Supreme Court had jurisdiction exclusively, but that all other questions raised and issues involved pertaining to the method and mode and regularity *vel non* of the assessment and collection of the taxes as well as the question of recourse against the warrantor were matters within the jurisdiction of the Fifth Circuit Court of Appeals. They prayed that an appeal be granted them to the Supreme Court upon the questions of the violation *vel non* of Act No. 170 of 1898, especially Section 7 thereof, and therefore the questions of the legality or constitutionality of the tax in question, that the court grant both a devolutive and suspensive appeal in the alternative and fix the bond.

The also prayed for an appeal to the Fifth Circuit Court of Appeals only upon the questions of fact and issues involving the regularity of the assessment and method of collecting the tax and the right to judgment against the warrantor. That on these issues the appeal be granted in the alternative and that the court fix the bond. The appeals were granted as prayed for.

In May, 1901, the plaintiffs filed a petition in the District Court in which they averred that an appeal had been granted by it to the Supreme Court on all the issues involving the constitutionality or legality of the tax in question, and to the Fifth Circuit Court on all other issues as the regularity of the assessment.

That the appeal to the Circuit Court had been lodged there first and a decision was rendered thereon reversing the decision rendered by the District Court; that they had then no interest in prosecuting

the appeal to the Supreme Court to reverse the judgment on the ground of unconstitutionality, because said judgment had been reversed by the Fifth Circuit Court of Appeals for the other reasons involved within its jurisdiction, and, therefore, they did not forfeit their appeal by lodging the transcript in the Supreme Court, though they did furnish the bond for a suspensive appeal within the proper delays and did everything incumbent upon them to perfect their said suspensive appeal to the Supreme Court, in the event they had not succeeded in obtaining a judgment from the Fifth Circuit Court reversing the judgment rendered by the District Court; that the Circuit Court of Appeals having refused to grant a rehearing, the defendants in said suit had obtained from the Supreme Court a writ of review and *certiorari* to the said Court of Appeals, requiring that court to certify up the case for the review and determination of the Supreme Court; that this proceeding revived, therefore, their interest in prosecuting the appeal to the Supreme Court on the issues involving the constitutionality *vel non* and the legality *vel non* of the tax in question, and that the Supreme Court had sole and exclusive appellate jurisdiction of such issues. That if the case was certified up from the Circuit Court of Appeals, without an appeal to the Supreme Court direct from the judgment of the District Court, the record would be incomplete and that only the questions of regularity of the assessment and the question of fact, not appealable direct to the Supreme Court, would be presented thereto by the process of review and *certiorari,* while the Supreme Court will be deprived of the record on the questions of constitutionality and legality *vel non* of the tax in question, *i. e.,* the only issues which were really appealable to the Supreme Court directly from the District Court.

They averred that it was necessary that the said appeal be regranted and perfected in order to bring the entire record before the Supreme Court so that it might, if it saw fit and proper in its wise discretion to consider and decide the question of legality and constitutionality *vel non,* and especially the question of the violation of Act No. 170 of 1898, and in order that the Supreme Court might not have its powers curtailed and be required to do a vain thing by reviewing a judgment which annuls the levy of a tax which is unconstitutional, and in order that the Supreme Court might, if it considered the decision of the Fifth Circuit Court incorrect upon the questions of fact and regu-

larity of assessment, still refuse to reverse the same on account of the unconstitutionality of the tax itself, and in order ·that the Supreme Court might, even if it reversed said judgment of the Circuit Court on the facts and regularity of assessment, still also reverse the judgment of the District Court upon the question of constitutionality and legality *vel non* of the tax itself.

In view of the premises, they prayed for a new order of appeal, for devolutive appeal, and to revise the order before given; that* said appeal be granted upon the questions of constitutionality and legality *vel non* and especially the violation of Act No. 170 of 1898, Section 7, and all incidental questions and issues not appealable to and not appealed to the Fifth Circuit Court of Appeals. An order of appeal was granted as prayed for.

An appeal bond was executed and the record lodged in this court. Defendants, in the District Court, moved to dismiss the appeal on the ground that it was an appeal from the judgment of the District Court, rendered in a case wherein neither the constitutionality nor legality of a tax was raised in the District Court, and wherein the same was not in issue and in contestation, and a case whereof the Supreme Court was without jurisdiction by reason of the smallness of the amount involved.

OPINION.

ON MOTION TO DISMISS.

We have jurisdiction of the appeal. The case is one in which the constitutionality and legality of a tax is in contestation. While the assessment made by the assessor of the Parish of Terrebonne is involved, the matter at issue lies back of the assessment. The matter in dispute is whether the plaintiffs are liable legally to taxation as owners of the cypress trees on the Magnolia plantation by reason of the contract made by them with Mrs. Humphreys, the owner of that plantation. The assessor and tax collector insist that they are so liable; the plaintiffs insist they are not. A claim for a tax advanced by the tax officers of the State against a particular person or his property, which is met by a denial on the part of the parties in interest, necessarily raises the question as to whether there exists any legal right of taxation against such person or his property. Parker, Tax Collector, vs, Strauss & Co., 49 Ann. 1173; State *ex rel.* City of New Orleans vs. Voorhies, Judge, 41 Ann. 541; State vs. Zuriche, 49 Ann. 457; Torian vs. Shayot, 47 Ann. 589; State vs. Lundie, 47 Ann. 1596; Gillis vs.

Clayton, 33 Ann. 286; Adler, Goldman & Co. vs. Board, 37 Ann. 507; Bush & Levert vs. Police Jury, 39 Ann. 901.

Were the plaintiffs to permit the assessment which they object to in this suit, to remain unchallenged, they would, under Article 233 of the Constitution of 1898, subject any movable property which they might own to seizure and sale hereafter in payment of the tax. The assessment would be practically a "judgment" affecting consequently all movables owned by the plaintiffs. The article declares that taxes on movables shall be collected by seizure and sale by the tax collector of the movable property of the delinquent, whether it be the property assessed or not, sufficient to pay the tax.

The defendants defend the tax which they advance against the plaintiffs as being one upon movables.

The appeal is maintained.

## ON THE MERITS.

Our attention is first directed to the objection which plaintiffs urge against the legality of the tax claimed against them, that the same property had for the year 1900 been included in the assessment made of the Magnolia plantation in the name of its owner, Mrs. Humphreys, and she had paid that tax. That under the express provisions of Act No. 170 of 1898 the same property could not be taxed twice in the same year. They urge that if the right which they acquired under their contract with Mrs. Humphreys was a right of ownership in the trees themselves, they having formed part of the plantation on the first of January, 1900, and having been taxed with that property, could not become again subject to taxation in their name for that year, because they may have become detached later in the year from the land and sold to them. They contend that they did not belong to them on the first of January, and that when they acquired them after that date they had been included in the assessment of the Magnolia plantation and the taxes on the same had been paid and they were not liable to taxation.

If that proposition be sustained, it disposes of the taxes for the year 1900 and of all other issues raised by the pleadings, for if the trees had already been assessed as part of the plantation in the name of its owner, Mrs. Humphreys, as owner, they could not be assessed a second time that year in the name of the plaintiffs.

It is urged by the appellees that the plaintiffs have no interest in that matter, but it is very clear that they have, for the liability of themselves on that and their other movable property to taxation for 1900, under Article 233 of the Constitution of 1898, is dependent upon the solution of that question. (Schlater vs. Brodus, 3 N. S. 324.)

In Southern Insurance Co. vs. Board of Assessors, 49 Ann. 401, this court held that "the levying of taxes is for the calendar year," and the "assessment of property" for the purpose of levying the annual taxes is likewise for the calendar year. So when the law provides that the assessment is to begin on the 2nd of January, and be completed on the 1st of March, it contemplates an assessment on the basis of the condition of things existing on the 1st of January.

The application of the doctrine of that case to the facts of the present one protects the plaintiffs and their movable property from taxation upon the trees on Magnolia plantation in the year 1900, and the trees themselves from taxation other than that for which they were liable on the 1st of January, 1900, as forming part of that plantation.

For the reasons assigned, it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the taxes for the year 1900, assessed in the name of the plaintiffs on a lot of cypress trees on the Magnolia plantation in the Parish of Terrebonne, by reason of their having acquired the ownership of the same under the contract made between themselves and Mrs. Humphreys on the 20th of February, 1900, by act before Edwin Clarence Wurzlow, notary public in and for the Parish of Terrebonne, be and the same are illegal, null and void, not due by the plaintiffs under the said assessment, the said trees having been included in the assessment for the year 1900 of the Magnolia plantation of which they formed part at that time, and not being subject to taxation a second time for the year. It is ordered that the said taxes be not enforced under that assessment, which is hereby declared null and void and ordered to be erased from the records. It is ordered that the appellees pay the costs in both courts.